IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

)
JAMES R. ZAZZALI,                        )
                                         )
                Plaintiff,               )
                                         )
        v.                               )        Civil Action No.  12-828-GMS
                                         )
ALEXANDER PARTNERS, LLC, et al.,         )
                                         )
                Defendants.              )
                                         )

## **MEMORANDUM**

### I.      **INTRODUCTION**

On June 27, 2012, the plaintiff, James R. Zazzali ("Zazzali"), Trustee of the Diversified

Business Services & Investments, Inc. ("DBSI") Private Actions Trust (the "PAT"), filed this

suit against over 200 named defendants and 500 "John Doe" defendants. (D.I. 1.) The 245-

paragraph Complaint alleges (1) violations of § 10(b) of the Securities Exchange Act of 1934

(the "Exchange Act") and SEC Rule 10b-5, (2) violations of § 20(a) of the Exchange Act, (3)

breaches of contract, (4) common law fraud, (5) negligence, and (6) breaches of fiduciary duties.

(*Id.*)

A number of defendants have filed motions to dismiss under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, arguing that Zazzali has failed to state claim upon which relief may be

granted and, in certain instances, has failed to meet the heightened pleading standards of Rule

9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").    Various

defendants have also challenged the Complaint's viability in light of the filing time limits found

in 28 U.S.C. § 1658(b).[1]  Zazzali consolidated his response to these motions in a single answering brief.[2]  (D.I. 322.)  For the reasons that follow, the court will grant-in-part and deny-in-part the present motions.

## II.    BACKGROUND

This action stems, in part, from the November 2008 bankruptcy filing of ninety-three Diversified Business Services & Investments, Inc. ("DBSI") entities.  (D.I. 1 at ¶ 9.)  On September 11, 2009, the bankruptcy court approved the appointment of Zazzali as the Chapter 11 Trustee for the DBSI entities.  (*Id.* at ¶ 10.)  On October 26, 2010, the bankruptcy court issued its Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of Liquidation.  (*Id.* at ¶ 12.)  Zazzali serves as trustee for two of the four trusts—the PAT and the Estate Litigation Trust—that were formed pursuant to this confirmation order.  (*Id.* at ¶ 13.)

The Second Amended Joint Chapter 11 Plan of Liquidation created the PAT to hold certain causes of actions assigned by creditors and equity holders of DBSI.  (*Id.* at ¶ 14.)  One

---

[1] The following defendants have filed motions to dismiss on Rule 12(b)(6) and/or statutes of limitations/repose grounds: Jason Bressler (D.I. 233); Dean McDermott (D.I. 235); Keith Witter (D.I. 237); Kasey Hafenbrack (D.I. 238); Mindy Ann Horowitz, Victor Kevin Kurylak, and Celeste Marie Leonard (D.I. 244); Daniel Berckes, Sue Desrosier, and Syd Widga (D.I. 249); Richard Steven Babjak, Robert Alan Walter, Robert Daniel Yarosz, and World Equity Group (D.I. 252); Chester Ju, Shirley Ju, Anne Hayward, Alan Schryer, Lori Gilson, Kenneth Bolton, and Scott Thomas (D.I. 259); Jeffrey Augspurger, Gary Barton, Ron Barton, Tod Billings, Trent Bryerly, Scott Cavey, Allan Crumes, Ron Davies, Tim Duma, Mike Eden, David Kowalski, Robert Kuh, Chris Miller, Michael Myers, Dwain Owens, Mark Pearson, Royce Ruth and Cory Thomas (D.I. 264); Richard Allen Frueh and Donald James Gunn, Jr. (D.I. 265); Owen Fisher (D.I. 278); Philip Atwan, Stacey Jim Morimoto, John Paul Spring, and Christian Spring (D.I. 287); and Bruce Ransom (D.I. 371).  The court refers to these parties collectively as the "Moving Defendants."

Some of the motions also seek dismissal under Rule 12(b)(6) and/or request that the court compel arbitration.  Those arguments are not addressed by this Memorandum.

[2] A fter Zazzali filed his consolidated answering brief, several additional defendants filed motions to dismiss: Bruce Ransom (D.I. 371) and Cannen Ferrell and Mike McKinzie (D.I. 382).  The relevant parties have stipulated to an extension of the briefing schedule for the motion filed by Cannen Ferrel and Mike McKinzie, (D.I. 404), and that motion is not yet fully briefed and will not be considered herein.  Zazzali, however, has failed to respond to Bruce Ransom's motion, and the court will consider it in this Memorandum.

category of claims held by the PAT are claims against "securities brokers/dealers" that provided services to DBSI. (*Id.* at ¶ 14 n.5.) In general terms, Zazzali claims that certain members of the PAT acquired securities in the DBSI entities from one or more of the defendants named in this action. He alleges that the defendants were securities brokers, the registered representatives of brokers, or control persons of brokers that facilitated the sale of DBSI securities in what eventually turned out to be a classic "Ponzi scheme."[3] (*Id.* at ¶ 2, 21.)

## III.   STANDARD OF REVIEW

Rule 12(b)(6) allows a party to move to dismiss a complaint for failing to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is warranted where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

A well-pleaded complaint, however, must contain more than mere labels and conclusions.

---

[3] Unfortunately, the scope and complexity of the Complaint creates some confusion in even the naming of the various parties, actors, and documents, as evidenced by Paragraphs 15–21. Zazzali first states that "[t]he Broker Defendants are all registered broker dealers with places of incorporation and principal places of business as listed on attached Exhibit B." (D.I. 1 at ¶ 15.) Exhibit B then proceeds to identify fifteen broker-dealer entities. (*Id.* at Ex. B.) Pausing here, one would assume that Zazzali uses the term "Broker Defendants" to refer to these fifteen broker dealer firms. Indeed, the next several paragraphs seem to confirm this understanding, as they identify (1) "Registered Representative Defendants" as employees of the Broker Defendants, (2) "Broker-Dealer Parent Defendants" as "parent companies of the Broker Defendants," and (3) "Broker-Dealer Owner/Officer Defendants" as "individuals who exercised control over the Broker Defendants." (*Id.* at ¶¶ 17–20.) The Complaint, however, then introduces considerable confusion by stating that "[t]he defendants, all of which are registered representatives, securities brokers and/or control persons of securities brokers, are sometimes collectively referred to herein as 'Broker Defendants.'" (*Id.* at ¶ 21.) From these introductory paragraphs alone, it is somewhat unclear whether the term "Broker Defendants" refers only to the fifteen broker firms or encompasses all the defendants.

Reading the Complaint as a whole, the court does understand Zazzali to be referring to all of the defendants when he employs the term "Broker Defendants." Nevertheless, it is worthwhile to note this ambiguity at the outset, as it takes on some significance in determining the scope of Zazzali's allegations. *See infra* notes 9, 14, 18–19.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court conducts a two-part analysis to determine whether dismissal is appropriate. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court accepts all well-pleaded facts as true but may disregard any legal conclusions. *Id.* at 210–11. The court notes, however, that where allegations "are no more than conclusions, [they] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. After separating the legal and factual elements, the court asks whether the facts alleged are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The heightened pleading requirements imposed by Rule 9(b) and the PSLRA are addressed below.

## IV. DISCUSSION

The court addresses each count of Zazzali's Complaint in turn.

A.    Count One: Violations of § 10(b) of the Exchange Act and SEC Rule 10b-5

1.    Section 10(b) and Rule 10b-5

Section 10(b) of the Exchange Act makes it unlawful through "any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange" to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Securities Exchange Act of 1934, Pub. L. No. 73-291, § 10(b), 48 Stat. 881, 891 (codified as

4

amended at 15 U.S.C. § 78j). Rule 10b-5, promulgated by the SEC to implement § 10(b) of the

Exchange Act, provides that:

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any
> means or instrumentality of interstate commerce, or of the mails or of any facility
> of any national securities exchange,
>
>> (a) To employ any device, scheme, or artifice to defraud,
>> (b) To make any untrue statement of a material fact or to omit to state a
>> material fact necessary in order to make the statements made, in the light
>> of the circumstances under which they were made, not misleading, or
>> (c) To engage in any act, practice, or course of business which operates or
>> would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  The Supreme Court has instructed that the elements of a private

securities action under § 10(b) are: "(1) a material misrepresentation or omission by the

defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the

purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic

loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S.

148, 157 (2008).

### 2. Heightened Pleading Requirements

Section 10(b) claims generally are subject to the heightened pleading requirements of

both the PSLRA, *see Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252–53 (3d Cir.

2009), and Federal Rule of Civil Procedure 9(b), *see In re Rockefeller Ctr. Props., Inc. Sec.

Litig.*, 311 F.3d 198, 216–17 (3d Cir. 2002).  While both standards are applicable to Zazzali's §

10(b) claims, "[t]o the extent that Rule 9(b) conflicts with the PSLRA, the statute supersedes it."

*Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc.*, 246 F. App'x 780, 784 n.5 (3d Cir. 2007).

The PSLRA imposes two distinct pleading requirements on a plaintiff bringing a

securities fraud action and requires that both be met in order for the claim to survive a motion to dismiss. *See Avaya, Inc.*, 564 F.3d at 252. First, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, § 101, 109 Stat. 737, 747 (codified at 15 U.S.C. § 78u-4(b)(1)). Further, the complaint must "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The particularity requirements of Rule 9(b) with regard to the circumstances constituting fraud are "comparable to and effectively subsumed by the requirements of . . . the PSLRA." *Avaya, Inc.*, 564 F.3d at 253 (internal quotation omitted). Rule 9(b)'s scienter requirement, on the other hand, has been superseded by the PSLRA. *See In re Wilmington Trust Sec. Litig.*, 852 F. Supp. 2d 477, 489 (D. Del. 2012).

3.    Analysis

For reasons discussed below, the court finds that Zazzali has adequately stated a claim for securities fraud under § 10(b) with respect to a narrow category of alleged misrepresentations.

a.    Applicability of Rule 9(b) and PSLRA pleading requirements

As an initial matter, the court rejects Zazzali's argument that, as a trustee, his complaint

6

should be held to relaxed pleading standards. (D.I. 322 at 3–4, 21–22.) For at least two reasons, the court is unconvinced that his Complaint should escape the heightened pleading requirements of Rule 9(b) and the PSLRA. First, most of the decisions cited by Zazzali discuss more liberal pleading requirements that might apply in the bankruptcy context. *See, e.g.*, *In re DBSI, Inc.*, No. 08-12687-PJW, 2011 WL 1810632, at *3 (D. Del. May 5, 2011) ("Rule 9's requirements . . . are relaxed in the bankruptcy context, particularly in cases such as the present in which a trustee has been appointed.") The present action is not a bankruptcy case, and Zazzali fails to point to a non-bankruptcy decision extending his proposed rule beyond that realm.[4] Additionally, none of Zazzali's referenced decisions support lowering the independent pleading bar imposed by the PSLRA. The particularity requirements set forth under the PSLRA were intended to "'substantially heighten' the existing pleading requirements," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 217, and they do not contain an exemption for trustee-initiated actions, *see* 15 U.S.C. §§ 78u-4(b)(1–2). In the absence of any authority supporting such an exception, the court is unwilling to force Zazzali's interpretation upon this statutory language. As such, the court applies the standard Rule 9(b) and PSLRA heightened pleading requirements to Zazzali's § 10(b) claims.

                b.      Material misrepresentations connected to the purchase or sale of securities

Once again, the first requirement of a § 10(b) claim is "a material misrepresentation or

---

[4] The court does recognize that the rationale for this relaxed Rule 9(b) standard in the cited bankruptcy decisions might well apply in a case such as this, in which a trustee presents the claims of others who were the actual parties to the transactions in question. *See In re O.P.M. Leasing Servs. Inc.*, 23 B.R. 199, 203 (Bankr. S.D.N.Y. 1983) ("[T]his liberality is required because it is often the Trustee, a third party outsider to the fraudulent transaction, that must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors."). It also notes, however, that even bankruptcy judges have reached different conclusions regarding the propriety of loosening Rule 9(b)'s requirements. *See, e.g., In re NE 40 Partners, Ltd. Partnership*, 440 B.R. 124, 128–29 (Bankr. S.D. Tex. 2010).

omission by the defendant." *Stoneridge Inv. Partners*, 552 U.S. at 157. Under the PSLRA, Zazzali is further expected to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The court believes the Complaint meets these requirements with respect to at least one set of statements. While one might expect that the sheer number of defendants would prevent Zazzali from specifying each of their claimed misrepresentations, the Complaint seeks to clear this hurdle by identifying several uniform documents that were used in each of the challenged transactions.

First, Zazzali contends that the Broker Defendants executed a Soliciting Dealer Agreement with DBSI in connection with each security sold. (D.I. 1 at ¶ 40.) That agreement required the Broker Defendants to limit their representations in connection with the sale to those representations contained in the private placement memoranda ("PPMs") created by DBSI and to deliver a copy of the currently effective PPM to any potential investor prior to submission of a written investment offer. (*Id.*) The Complaint alleges that "[t]he PPM for each DBSI security indicated that the broker-dealer would be paid a 'due diligence fee'" and that "these statements were untrue and misleading because the Broker Defendants did not spend the due diligence fees to conduct independent due diligence investigations with regard to the DBSI securities." (*Id.* at ¶ 55.)

Zazzali further contends that the Broker Defendants required the investors to sign a Subscription Agreement in connection with each sale of DBSI securities. (*Id.* at ¶ 46.) According to the Complaint, each Subscription Agreement contained a certification by the Broker Defendant that "it had 'reasonable grounds to believe, on the basis of information supplied by the Purchaser, and any other pertinent information,' that the DBSI security was a

8

'suitable investment for the Purchaser.'" (*Id.* at ¶ 56.) The Subscription Agreements also allegedly included a statement "that each Broker Defendant acknowledged its membership in the Financial Industry Regulatory Authority ("FINRA") and [the Securities Investor Protection Corporation ("SIPC")] and its attendant obligation to comply with all federal and state laws, rules, and regulations." (*Id.*) The Complaint claims that, through this acknowledgment, each defendant effectively represented that it had undertaken a due diligence investigation. (*Id.*) Zazzali identifies the both "suitable investment" certification and the implicit representation that the defendants conducted a due diligence investigation as material misrepresentations given the defendants' alleged failure to conduct any such investigation.[5] (*Id.*)

Again, 15 U.S.C. § 78u-4(b)(1) requires the Complaint to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." Section 78u-4(b)(1) then provides that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is

---

[5] As explained in more detail below, the court believes the misrepresentations identified in Paragraph 56 of the Complaint meet the heightened pleading requirements of Rule 9(b) and the PSLRA. It takes this opportunity, however, to clarify two points regarding the due diligence representations alleged to have been made through the defendants' acknowledgment of their FINRA and SIPC duties.

First, some of the Moving Defendants have attacked the so-called "implied representation theory"—the proposition that the defendants had certain due diligence obligations imposed by, *inter alia*, their membership in FINRA and SIPC and that these obligations functioned as implicit representations that they, in fact, would conduct due diligence. (D.I. 361 at 6; D.I. 364 at 6–7.) The court agrees with the defendants that this species of implied representation cannot support a securities fraud claim. *See SEC v. Tambone*, 597 F.3d 436, 447–49 (1st Cir. 2010) (en banc); *Gabriel Capital, LP v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 262–63 (S.D.N.Y. 2000). The court, however, distinguishes the "implied representation theory" targeted by the defendants from the theory actually advanced in Paragraph 56. While the "implied representation theory" fails for lack of an actual misrepresentation, the implicit due diligence representation of Paragraph 56 is based on the allegedly express statements of the defendants. The implied representation theory attacked by the Moving Defendants would infer a representation from the mere fact of the brokers' legal obligations—Paragraph 56, on the other hand, finds a due diligence representation in the defendants' explicit statements that they would comply with those obligations.

The court notes, however, that it cannot locate the supposed statement acknowledging FINRA and SIPC duties in Exhibit I's sample Subscription Agreement. (D.I. 1 at Ex. I.) Zazzali is ordered to clarify this issue by amendment of the Complaint. If the allegation of Paragraph 56 concerning this statement was mistaken, the only remaining actionable misrepresentation will be the Subscription Agreement's "suitable investment" certification.

formed." The court believes Zazzali has met these pleading responsibilities with respect to the certifications made in the Subscription Agreements but not the alleged misrepresentations in the PPMs.

The Supreme Court has recently explained that a person or entity does not "make" a statement for purposes of Rule 10b-5 liability unless he has "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders,* 131 S. Ct. 2296, 2302 (2011) ("Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right."). In *Janus,* the Court found that an investment adviser could not be held liable under § 10(b) for false statements contained in the prospectuses of its client mutual fund, where it was the mutual fund that had ultimate control over the contents of the documents and filed them with the SEC. *Id.* While the adviser was heavily involved in preparing the prospectuses and made them available on its own website, it did not exercise sufficient control over their content to expose itself to liability in a private action.[6] *Id.* at 2305. The Court used the metaphor of a speechwriter and speaker to explain its decision, noting that "[e]ven when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit— or blame—for what is ultimately said." *Id.* at 2302.

Here, the Complaint implicitly acknowledges that DBSI rather than the defendants controlled the content of the PPM. (D.I. 1 at ¶ 40, 45, Ex. H.) While the defendants may have delivered the PPMs to the investors, they did not have the requisite "ultimate authority over the

---

[6] While 15 U.S.C. § 78t(e) allows the SEC to bring fraud suits against aiders and abettors that knowingly or recklessly provide "substantial assistance" to another in making an actionable statement, no analogous private cause of action exists. *Janus Capital Grp.,* 131 S. Ct. at 2302; *see also* 15 U.S.C. § 78t(e).

statement."[7]   Zazzali makes much of the *Janus* Court's "speechwriter" example, suggesting that the Broker Defendants actually should be viewed as the "speaker" in that metaphor.  (D.I. 322 at 6–7.)  This view, however, represents a misunderstanding of the Court's example, which was seemingly meant to highlight the difference between merely helping another to "craft" his message and actually "making" one's own statement. *See Janus*, 131 S. Ct. at 2305.  The mere fact that it was the defendants who distributed the PPMs to the investors does not justify attributing the statements therein to them.   Analogously, the *Janus* Court stated that an investment adviser could not be liable for posting deficient prospectuses on its own website, since merely relaying the information in that way "does not indicate that the hosting entity adopts the document as its own statement or exercises control over its content." *Id.* at 2305 n.12. Accordingly, the court finds that Zazzali has failed to allege that any defendants actually made the alleged misrepresentations in the PPM and thus has failed to state a § 10(b) claim with regard to those statements.

On the other hand, the court believes the Complaint has adequately identified alleged misrepresentations in the Subscription Agreements.   Unlike the PPM statements, the Subscription Agreement statements appear in certifications signed by the defendants.  While the Subscription Agreements themselves appear to have been prepared by DBSI, they contain sections in which the broker-dealers were required to enter information and provide their own signatures, thereby independently endorsing particular statements.  One such statement was the

---

[7] At Paragraph 45 of the Complaint, Zazzali does allege that "[a]s the sole point of contact with each Investor, the Broker Defendants possessed the ultimate control over the dissemination of the PPMs and the representations therein." (D.I. 1 at ¶ 45.)  While this conclusory statement may be true in the limited sense that the Broker Defendants could control the PPM representations by declining entirely to distribute the PPMs, the remainder of the Complaint as well as the attached sample Dealer Agreement make clear that actual content control resided with DBSI.

representation now challenged by Zazzali that the Broker Defendant "had 'reasonable grounds to believe, on the basis of information supplied by the Purchaser, and any other pertinent information,' that the DBSI security was a 'suitable investment for the Purchaser.'" (*Id.* at ¶ 56, Ex. I.) In providing this signed certification, the defendants did not merely host the challenged Subscription Agreement statements on a website or otherwise distribute them to investors—rather, they explicitly adopted them as their own statements. *See Janus*, 131 S. Ct. at 2305 n.12.

Additionally, while the Complaint does not separately list each defendant alongside his claimed misrepresentations, the uniform nature of the Subscription Agreement statements at issue make such an exhaustive format unnecessary. Courts have referred to Rule 9(b) and the PSLRA as "requir[ing] plaintiffs to plead the who, what, when, where and how" in asserting securities fraud. *Avaya, Inc.*, 564 F.3d at 253 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)). The plaintiff, however, is not required to give the exact date, time, and location of the fraud in providing the "when" and "where"—making clear that it occurred upon the distribution of the Subscription Agreements to the investors is enough. *See Bank One, Columbus, Ohio N.A. v. Fin. Ventures, LLC*, No. C2-01-0049, 2002 WL 484308, at *3 (S.D. Ohio Mar. 26, 2002); *Onesti v. Thomson McKinnon Sec., Inc.*, 619 F. Supp. 1262, 1265 (N.D. Ill. 1985). Likewise, the "who," "what," and "how" elements are satisfied here through Zazzali's identification of the particular Subscription Agreement statements at issue and his allegations that each of the defendants provided these documents to each of their investor customers.[8]

---

[8] Some of the Moving Defendants suggest that allowing Zazzali's § 10(b) claims to go forward would represent a return to the discredited "group pleading doctrine." As explained by the Third Circuit in *Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007), that doctrine was "a judicial presumption that statements in group-published documents . . . are attributable to officers and directors who have day-to-day control or involvement in regular company operations. Under the doctrine, where defendants are insiders with such control or involvement, their specific connection to fraudulent statements in group-published documents is unnecessary." 503 F.3d at 335.

Finally, the Complaint also states with sufficient particularity the facts upon which Zazzali forms

his belief of securities fraud, referencing the specific documents that contained the alleged

misrepresentations, (D.I. 1 at ¶ 56), the particular facts that the defendants would have been

aware of had they conducted independent due diligence, (*id.* at ¶¶ 189–93), and the third-party

due diligence reports upon which the defendants actually may have relied, (*id.* at ¶¶ 194–203).[9]

---

Before the PSLRA, it was recognized in several circuits as a judicial exception to Rule 9(b)'s particularity requirements. *See id.* at 336 n.5. The *Winer Family Trust* court, however, held that the group pleading doctrine was no longer viable in § 10(b) actions after the enactment of the PSLRA. *Id.* at 337; *see also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002) (arriving at same conclusion).

    Contrary to the arguments from some of the Moving Defendants, Zazzali's § 10(b) claims do not rely upon the group pleading doctrine. Rather, the court understands the Complaint to allege that each of the defendants certified the Subscription Agreements and thus individually made the claimed misrepresentations therein. (D.I. 1 at ¶ 56.) As discussed below, *see infra* note 9, Zazzali is expected to clarify this issue via a proposed amendment, and the court may reconsider the sufficiency of the § 10(b) claims with respect to the Broker-Dealer Parent Defendants and the Broker-Dealer Owner/Officer Defendants in light of that clarification.

    [9] Having explained that the Complaint meets its initial pleading obligations with respect to the alleged misrepresentations of Paragraph 56, the court now lists some of supposed misrepresentations which have not been sufficiently plead:

    (1) First, the Complaint fails to state a § 10(b) claim for statements contained in the Soliciting Dealer Agreement. While Zazzali suggests that certain Soliciting Dealer Agreement statements represent actionable misrepresentations, it is unclear from the Complaint whether the Soliciting Dealer Agreement or the statements therein were ever communicated to the investors. (D.I. 1 at ¶ 57.)

    (2) Zazzali also alleges that "[t]he Broker Defendants misrepresented to Investors that the [tenant-in-common ("TIC")] investments would generate a generous and steady stream of revenue through rental income. (*Id.* at ¶ 61.) He fails, however, to identify where, when, or how these statements were made.

    (3) Additionally, as discussed above, the court rejects any argument by Zazzali that the defendants' obligations under FINRA, SIPC, or other rules function as an implied representation that they conducted an appropriate due diligence investigation. *See supra* note 5. Again, this does not mean that the defendants' alleged statements in the Subscription Agreements that they would comply with those obligations did not operate as implicit due diligence representations.

    (4) In his answering brief, Zazzali now suggests that he has also stated an "unsuitability claim," (D.I. 322 at 17), which functions as "a subset of the ordinary § 10(b) fraud claim," *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993). An unsuitability claim requires a plaintiff to prove: " (1) that the securities purchased were unsuited to the buyer's needs; (2) that the defendant knew or reasonably believed the securities were unsuited to the buyer's needs; (3) that the defendant recommended or purchased the unsuitable securities for the buyer anyway; (4) that, with scienter, the defendant made material misrepresentations (or, owing a duty to the buyer, failed to disclose material information) relating to the suitability of the securities; and (5) that the buyer justifiably relied to its detriment on the defendant's fraudulent conduct." *Id.* Zazzali, however, has failed to plead with sufficient particularity

c.    Scienter

15 U.S.C. § 78u–4(b)(2) provides that the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* "This scienter standard requires plaintiffs to allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'" *Avaya, Inc.*, 564 F.3d at 267 (quoting *Advanta*, 180 F.3d at 534–35). The Third Circuit has further clarified that

> [a] reckless statement is one involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and

---

that each of the hundreds of defendants "knew or reasonably believed" the purchased DBSI securities were unsuitable.

(5) Finally, at several points, the Complaint references supposed misrepresentations in passing without then providing descriptions sufficient to actually identify the challenged statements or determine how they were misleading. (*See, e.g., id.* at ¶¶ 57, 61, 71, 91.) Furthermore, Zazzali's Answering Brief fails to defend—or even address—most of these alleged misrepresentations, focusing instead on the due diligence representations in the PPM and Subscription Agreements. While the Complaint might contain sufficient allegations to support these claimed misrepresentations somewhere in its 245 paragraphs, it is not the court's responsibility to parse its fifty-four pages in an attempt to connect the dots. As currently organized, the Complaint fails to meet the pleading requirements of the PSLRA and Rule 9(b) with respect to all but the certifications in the Subscription Agreements. Zazzali will be granted leave to amend the Complaint to address these deficiencies if possible. *See* Fed. R. Civ. P. 15(a)(2); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir.1990) (emphasizing "policy favoring liberal amendment of pleadings").

The court further orders Zazzali to clarify which defendants made the Subscription Agreement certifications. Presently, the Complaint alleges that each of the "Broker Defendants" made these certifications, (D.I. 1 at ¶ 56), and, while Zazzali's claims are subject to the heightened pleading standards previously discussed, the court still must grant his allegations the presumption of truth at the 12(b)(6) stage, *see Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007). As a practical matter, however, the court has some doubt that *all* of the defendants in this suit—as Zazzali has apparently defined the term "Broker Defendants," *see supra* note 3—actually made the certifications. The Complaint focuses on control person liability under § 20(a) of the Exchange Act for the Broker-Dealer Parent Defendants and the Broker-Dealer Owner/Officer Defendants and, outside of the broad allegations of Paragraph 56, does not seem to suggest that these defendants directly made the certifications. Exhibit A suggests that Zazzali's intent might have been to allege that only the defendant broker dealer *firms* (listed on Exhibit B) and their registered representatives (listed on Exhibit C) made the certifications. (D.I. 1 at ¶¶ 15–17, Ex. A.) In other words, while the court believes that Zazzali has satisfied his pleading responsibilities in identifying the certifications as material misrepresentations, it has some reason to doubt the complete accuracy of the underlying allegations. To the extent this skepticism is warranted and Zazzali's allegation that each of the defendants made the certification was inadvertent, that allegation should be appropriately amended consistent with Zazzali's responsibilities under Rule 11.

14

> which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

*Id.* at 267 n.42 (quoting *Advanta*, 180 F.3d at 535). While scienter need not be conclusively demonstrated at the pleadings stage, its "inference . . . must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Representative of the Moving Defendants' challenges on this point is defendant Dean McDermott's complaint that "a general allegation in reference to hundreds of defendants hardly shows that [an individual defendant] acted with the 'intent to deceive, manipulate, or defraud,' or that he had a 'knowing or reckless state of mind.'" (D.I. 236 at 6.) The court, however, cannot agree with this assessment. While the Complaint does not individually address each defendant's mental state, it provides the necessary information about each of the "hundreds of defendants" in alleging that they were all broker dealers that represented they possessed knowledge that they could not have possibly had.

There is a difference between stating "I have reasonable grounds to believe this is a suitable investment for the investor," and "this is a suitable investment for the investor." If Zazzali had challenged the latter representation, the court is not certain it could find scienter, as the alleged falsity of such a statement may have been the result of mere negligence. The former representation, however, says something about not only the suitability of the investment but also the speaker's knowledge. The essence of Zazzali's § 10(b) claims is not that the defendants mischaracterized the strength of the DBSI securities but that they misrepresented that they had

15

reasonable grounds for believing in that strength.[10]

Taking the Complaint's allegations as true and drawing all reasonable inferences in Zazzali's favor, the court finds that he has plead "facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'" Viewed properly, Zazzali's claim is that the defendants simply lied as to the extent of their knowledge about the DBSI securities, and the court has little trouble characterizing such a misrepresentation as reckless. The "danger of misleading buyers" through a misrepresentation about their own knowledge was "so obvious that the [defendants] must have been aware of it." Likewise, it cannot be within the ordinary standard of care for a broker to exaggerate the state of his own knowledge regarding a security. *See de Kwiatkowski v. Bear, Sterns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002) (noting that, in a nondiscretionary account, a broker's fiduciary duties include "giv[ing] honest and complete information when recommending a purchase or sale"). Moreover, the facts alleged here actually give rise to an inference of *conscious* behavior. When one makes a misrepresentation about external matters, he may, for any number of reasons, be unaware of that statement's falsity. On the other hand, when he describes the extent of his own knowledge, he is in complete command of the facts being conveyed and, absent sheer carelessness in his speech, can be expected to know of any inaccuracies. Taking these considerations together with the fact that the defendants had a clear financial incentive to encourage the sales, *see Tellabs, Inc.*, 551 U.S. at 325 (noting that "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a

---

[10] Zazzali effectively claims that the defendants said they had reasonable grounds but that this statement must have been false, since no such grounds could have existed. Of course, this claim relies upon an assumption that, in order for reasonable grounds to exist, the defendants must have conducted independent due diligence—an assumption that is questionable for several reasons, including the apparently limited definition of "suitability" in the Subscription Agreements. (D.I. 1 at Ex. I.) The court, however, regards the accuracy of that assumption and the broader question of whether the defendants did, in fact, have reasonable grounds to believe the DBSI securities were suitable to be questions of fact that are not properly resolved at this stage.

scienter inference"), the court believes an inference of reckless or conscious behavior is at least

as plausible as any other inference.[11]

> ### d.    Remaining § 10(b) elements

In addition to a material misrepresentation or omission connected to the purchase or sale

of a security and scienter, a § 10(b) claim also requires "reliance upon the misrepresentation or

omission; . . . economic loss; and . . . loss causation." *Stoneridge Inv. Partners.*, 552 U.S. at 157.

Only some of the Moving Defendants challenge the sufficiency of the Complaint with respect to

these remaining elements, and the court finds that Zazzali has sufficiently plead reliance,[12] loss,

---

[11] If Zazzali amends the Complaint to remove the allegations that the Broker-Dealer Parent Defendants and the Broker-Dealer Owner/Officer Defendants directly made the claimed misrepresentations in the Subscription Agreements, *see supra* note 9, the scienter requirement also would likely warrant dismissal of Count One as to these defendants, *see In re Tyco, Int'l, Ltd., Sec. Litig.*, 185 F. Supp. 2d 102, 115 (D.N.H. 2002) ("Absent specific factual allegations linking specific defendants with the preparation of . . . allegedly false financial statements . . . defendants cannot be said to have necessarily participated in such activities simply because they were in positions of authority . . . .").

[12] Some of the Moving Defendants suggest that the Complaint fails to meet this prong, in light of the Third Circuit's discussion of reliance in the context of a § 18 claim in *In re Suprema Specialties, Inc. Securities Litigation*, 438 F.3d 256 (3d Cir. 2006). (D.I. 253 at 13.) In that decision, the Third Circuit panel found that, while the plaintiffs "alleged cursorily that they 'received, reviewed, actually read, and relied upon'" various Form 10-Q and 10-K filings, they failed "to plead facts probative of their actual reliance on any specific false statements contained in those filings." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 284. This failure was fatal to the plaintiffs' reliance allegations and warranted dismissal of the § 18 claims. *Id.* The court, however, believes the *In re Suprema Specialties* decision is distinguishable. Unlike the plaintiffs in that case, Zazzali, in addition to alleging generally that the investors received the documents containing the supposed misrepresentations, (D.I. 1 at ¶ 46), has identified the specific statements at issue and plead that the investors relied on those particular misrepresentations, (*id.* at ¶¶ 56, 210). Another decision cited by the Moving Defendants is *In re NationsMart Corp Sec. Litig.*, 130 F.3d 309 (8th Cir. 1997), which indicated that, in order to plead actual reliance, a plaintiff must "allege specific facts showing that they relied on [the allegedly misleading statements]." 130 F.3d at 322. The Eight Circuit found that the plaintiffs in that case failed to meet this requirement because "[t]hey did not claim that they ever read the [document at issue] or specify which allegedly fraudulent statements they relied on." *Id*; *see also In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 363 (S.D.N.Y. 2011) (noting in § 10(b) case that "[t]ransaction causation is akin to reliance; it requires only an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction"). Zazzali, however, has done precisely that. As noted above, the Complaint identifies the Subscription Agreement as the document at issue, specifies the allegedly fraudulent statements therein, and alleges that the PAT investors relied upon those statements. Accordingly, the court finds that the Complaint sufficiently alleges reliance by the PAT investors. Whether such reliance *actually* occurred is a question of fact that cannot be determined at this early stage. *See, e.g.*, *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1145 (C.D. Cal. 2011).

and loss causation.[13]

    e.    Timeliness

Finally, several of the Moving Defendants contend that Zazzali's § 10(b) claims are time-

barred under 28 U.S.C. § 1658(b), which provides that:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or
> contrivance in contravention of a regulatory requirement concerning the securities
> laws . . . may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658(b).  The Third Circuit has identified §1658(b)(1) as a statute of limitations and

§ 1658(b)(2) as a statute of repose.  *See In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199

(3d Cir. 2007).  "A period of limitation bars an action if the plaintiff does not file suit within a set

---

[13] A Rule 10b-5 action requires the plaintiff to plead loss (proximate) causation, since the securities laws are intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). "[A] misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005). In pleading loss causation, the court understands the plaintiff to be held to the notice pleading standard of Rule 8 and not the heightened standards of Rule 9(b) or the PSLRA. While the Supreme Court has not directly resolved this question, it has suggested that the heightened standards are inapplicable in pleading loss and loss causation. *See Dura Pharms. Inc.*, 544 U.S. at 346 ("[T]he Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss."). Additionally, panels of the Third Circuit and judges within this district have read *Dura Pharmaceuticals* broadly. *See, e.g., McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n.4 (3d Cir. 2007); *In re Heckman Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 541 n.142 (D. Del. 2012); *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 180–81 (D. Del. 2010).

    Zazzali has satisfied his pleading responsibilities on the loss causation issue in alleging that DBSI effectively engaged in a Ponzi scheme that would have been discovered through appropriate due diligence by the defendants and that the defendants' "suitable investment" certification and implicit due diligence representation in the Subscription Agreements had the effect of concealing the lack of an investigation and consequently the DBSI fraud. While some of the Moving Defendants argue that the true cause of the DBSI losses was the broader downturn in the real estate market, (D.I. 253 at 15), drawing all inferences in Zazzali's favor, the court believes the trustee has sufficiently plead that the defendants' alleged misrepresentation were the proximate cause. Zazzali need not conclusively prove loss causation at this early stage. *See EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884–85 (3d Cir. 2000) ("The causation issue becomes most critical at the proof stage. Whether the plaintiff has proven causation is usually reserved for the trier of fact.").

period of time from the date on which the cause of action accrued. In contrast, a period of repose

bars a suit a fixed number of years after an action by the defendant . . . even if this period ends

before the plaintiff suffers any injury." *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 n.1 (7th Cir.

1987). Consistent with this traditional understanding, the five-year repose period of subsection

(b)(2) begins to run on the date of the alleged misrepresentation. *See In re Exxon Mobil*, 500

F.3d at 200. Additionally, the Supreme Court has instructed that the two-year period set forth in

subsection (b)(1) does not begin until the plaintiff discovers, or with reasonable diligence would

have discovered, at least the facts of misrepresentation and scienter.[14] *See Merck & Co., Inc. v.*

*Reynolds*, 130 S. Ct. 1784, 1796 (2010).

  As the Third Circuit explained in *Bethel v. Jendoco Construction Corporation*, 570 F.2d

1168 (3d Cir. 1978):

> [T]he statute of limitations constitutes an affirmative defense to an action. Under
> the law of this and other circuits, however, the limitations defense may be raised
> on a motion under Rule 12(b)(6), but only if "the time alleged in the statement of
> a claim shows that the cause of action has not been brought within the statute of
> limitations."

*Id.* at 1174. It is well-settled that, "[i]f the bar is not apparent on the face of the complaint, then

---

[14] The court recognizes that there exists some confusion regarding precisely when the two-year period of subsection (b)(1) begins. It is unclear whether it runs from the time the plaintiff discovers or should have discovered the facts constituting each element of a § 10(b) fraud (including his injury) or whether it runs from some potentially earlier point. *See Merck & Co., Inc.*, 130 S. Ct. at 1796 ("We . . . hold that facts showing scienter are among those that 'constitut[e] the violation.' In so holding, we say nothing about other facts necessary to support a private § 10(b) action."); *In re Exxon Mobil*, 500 F.3d at 201 n.15. The difficulty, in part, lies in reconciling (1) the characterization of subsection (b)(1) as a statute of limitations, (2) the typical understanding that such limitations periods begin to run only after the cause of action accrues (i.e. an injury occurs), (3) the fact that both subsections use the term "violation," and (4) the Third Circuit's determination that "violation" in subsection (b)(2) means only the misrepresentation. "To say that the statute of limitations begins at a different time than the statute of repose would require the same word to have two meanings within the same statutory provision—a significant textual mountain to climb." *Id.*; *see also McCann v. Hy-vee. Inc.*, 663 F.3d 926, 932 (7th Cir. 2011). It is at least clear, however, that the fact of scienter is a "fact[] constituting the violation" under § 1658(b)(1), and, for reasons discussed below, this understanding defeats the defendants' timeliness defense at this stage.

it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* Here, Zazzali filed the Complaint on June 27, 2012, and several of the Moving Defendants contend that he should have known of the facts constituting the alleged fraud prior to June 27, 2010, in light of both the October 27, 2008 investor suit charging DBSI with running a "Ponzi" scheme and the bankruptcy examiner's October 19, 2009 report concerning various DBSI financial improprieties. (*See, e.g.*, D.I. 253 at 16; D.I. 268 at 10–14.)  The court cannot agree with their assessment.   As Zazzali notes, "[t]he dates on which investors learned that certain DBSI Companies may have acted fraudulently tell one nothing about when Investors learned that the Broker Defendants had misrepresented their performance of due diligence." (D.I. 322 at 29.) While the Moving Defendants ultimately may be able to show that Zazzali and the PAT investors should have been aware of the facts constituting the Broker Defendants' alleged violations before June 27, 2010, it is not facially apparent at this stage.

It is clear, however, that any remaining § 10(b) claims based upon misrepresentations alleged to have been made before June 27, 2007 are barred by the five-year statute of repose set forth in 28 U.S.C. § 1658(b)(2).  *See In re Exxon Mobil*, 500 F.3d at 200.  The court will dismiss these claims.

     B.     Count Two: Violations of § 20(a) of the Exchange Act

          1.     Section 20(a)

The Complaint also alleges violations of § 20(a) of the Exchange Act by the Broker-Dealer Parent Defendants and the Broker-Dealer Owner/Officer Defendants.  (D.I. 2 at ¶¶ 215–219.) Section 20(a) of the Exchange Act provides:

> Every person, who directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable

20

jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Securities Exchange Act of 1934, Pub. L. No. 73-291, § 20(a), 48 Stat. 881, 899 (codified at 15 U.S.C. § 78t). A claim under § 20(a) is a derivative claim requiring an underlying violation of the Exchange Act. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 211–12. Thus, in order to prevail on a § 20(a) claim, a plaintiff must demonstrate both that (1) the defendant "controlled another person or entity," and (2) "that the controlled person or entity committed a primary violation of [§ 10(b)]." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). Additionally, the Third Circuit has required that the control person be "a culpable participant in the fraud." *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470. 484–85 (3d Cir. 2013); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 284 n.16; *In re Heckman Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 543 (D. Del. 2012). While there is some uncertainty in this circuit as to whether § 20(a) requires that "culpable participation" actually be plead, *see Belmont*, 708 F.3d at 485 n.20 (declining to resolve the "difference of opinion" that has emerged among district courts in the Third Circuit), the court continues to believe that allegations of such culpable conduct are necessary, *see In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560, 562 (D. Del. 2002) ("[T]he heightened standard of the PSLRA requires that a claim under Section 20(a) state with particularity the circumstances of both the defendants' control of the primary violator, as well as of the defendants' culpability as controlling persons."), *aff'd*, 357 F.3d 322 (3d Cir. 2004).[15]

---

[15] Most decisions from this district addressing the pleading question have also adopted this approach. *See In re Heckman Corp. Sec. Litig.*, 869 F. Supp. 2d at 543; *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 707 (D. Del. 2010); *AES Corp. v. Dow. Chem. Co.*, No. 99-673-JJF, 2001 WL 34367296, at *5 (D.

2.    Analysis

Zazzali contends that the Complaint adequately pleads control person liability under §

20(a) and disputes the continued viability of *In re Digital Island* in light of more recent decisions

within the Third Circuit. *See, e.g.*, *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 181

(D. Del. 2010); *In re Royal Dutch/Shell. Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 565 (D.N.J.

2005). In particular, Zazzali argues that (1) a § 20(a) plaintiff need not allege "culpable

participation" and, (2) in cases where a trustee is prosecuting a complex fraud case, neither the

circumstances of the defendant's "control" nor the circumstances of his "culpability" need to be

plead with particularity. (D.I. 322 at 21–22.) For the reasons already noted in *In re Digital

Island* and examined at some length by Judge Chesler in *In re Merck & Co., Inc. Securities,

Derivate & "ERISA" Litigation*, No. 05-1151-SRC, 2012 WL 3779309 (D.N.J. Aug. 29, 2012),

the court rejects Zazzali's invitation to alter its approach to control person claims. Since the

Complaint contains, at best, only conclusory allegations that the Broker-Dealer Parent

Defendants and the Broker-Dealer Owner/Officer Defendants acted as "culpable participants" in

connection with the claimed misrepresentations, the court finds that Zazzali has failed to

adequately state a § 20(a) claim. (D.I. 1 at ¶ 216.)

C.    Count Three: Breaches of Contract

In order to state a claim for breach of contract, a plaintiff generally must allege (1) the

existence of a contractual obligation, (2) a breach of that obligation, and (3) a resulting injury to

the plaintiff. *See, e.g.*, *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011). The

court finds that Zazzali has failed to state a sufficient contract claim. While the Subscription

---

Del. Jan. 19, 2001); *Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1256–57 (D. Del. 1991). *But see Dutton v. Harris
Stratex Networks, Inc.*, 270 F.R.D. 171, 181 (D. Del. 2010).

Agreements contain representations that the defendants "had 'reasonable grounds to believe, on the basis of information supplied by the Purchaser, and any other pertinent information,' that the DBSI security was a 'suitable investment for the Purchaser,'" (D.I. 1 at ¶ 56), they are not alleged to contain any promises that the defendants would take future actions for the benefit of the investors. Zazzali thus has failed to identify an actual contractual obligation in the Subscription Agreements to which the defendants were subject. The Soliciting Dealer Agreements also provide no help to Zazzali, since they were agreements between only DBSI and the defendants, in which the investors were not intended third-party beneficiaries.[16]  (D.I. 1 at ¶¶ 40–42, Ex. H.)

     D.     Count Four: Common Law Fraud

A claim for common law fraud under Delaware law requires a plaintiff to plead "with particularity," *see* Fed. R. Civ. P. 9(b), the following elements:

> (1) defendant's false representation, usually of fact; (2) made either with knowledge or belief or with reckless indifference to its falsity; (3) with an intent to induce the plaintiff to act or refrain from acting; (4) the plaintiffs action or inaction resulted from a reasonable reliance on the representation; and (5) reliance damaged the defendant.[17]

*Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990); *see also Heller*, 814 F. Supp. 2d at 452. Such claims are not subject to the pleading requirements of the PSLRA. *Snowstorm Acquisition Corp.*, 739 F. Supp. 2d at 708. For reasons discussed above, the court finds that, with the

---

[16] *See* Restatement (Second) of Contracts §§ 302, 304, 315 (1981).

[17] The Moving Defendants focus their challenges to the common law fraud claims on Zazzali's supposed failure to meet the heightened pleading requirements of Rule 9(b). None explicitly discuss the choice of law question and whether Delaware law or some other states' laws apply to this count. In the absence of any argument that the Count Four claims must fail because the applicable state law adds some novel element to fraud claims not required by Delaware and most other jurisdictions, the court assumes, for the limited purpose of the present motions to dismiss, that Delaware law applies.

exception of the Subscription Agreement certifications, the Complaint fails to allege any misrepresentations with sufficient particularity. *See supra* Section IV.A.3.b–d. As such, the court will dismiss all common law fraud claims not based on the Subscription Agreement certifications.[18]

E.     Count Five: Negligence

In most cases, a negligence claim requires a plaintiff to plead: (1) a duty of care, (2) breach of that duty, and (3) that the breach proximately caused the plaintiff to suffer damages. *See, e.g.*, *Halchuck v. Williams*, 635 F. Supp. 2d 344, 346 (D. Del. 2009) (applying Delaware law); *Shogen v. Global Aggressive Growth Fund, Ltd.*, No. 04-5695-SRC, 2007 WL 1237829, at *16 (D.N.J. Apr. 26, 2007) (applying New Jersey law); *Schmechel v. Dille, M.D.*, 219 P.3d 1192, 1203 (Idaho 2009). Rule 9(b)'s heightened pleading bar generally does not apply to negligence claims. Here, Zazzali alleges that the defendants "owed Investors . . . duties to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise in connection with the marketing and sale of the DBSI securities" and that they "breached this duty by failing to exercise reasonable care and competence in conducting their due diligence in connection with the marketing and sale of the DBSI securities." (D.I. 1 at ¶¶ 233–34.) Whether the defendants' failure to conduct due diligence investigations fell short of the standard of care ordinarily employed in the industry is a disputed question of fact that cannot be resolved at this early stage. As such, the court will deny the Moving Defendants' motion with respect to Count

---

[18] The court understands the Complaint to allege common law fraud on the part of all the defendants. (D.I. 1 at ¶ 231.) However, as indicated above, *see supra* note 9, the court is somewhat skeptical that Zazzali actually intended to allege that all the defendants directly engaged in fraudulent misrepresentations. If Zazzali intended to allege only that the broker dealer firms and their registered representatives made these misrepresentations, he is instructed to seek an appropriate amendment consistent with his responsibilities under Rule 11.

Five.[19]

    F.    Count Six: Breaches of Fiduciary Duties

While it is not entirely clear what states' laws govern the fiduciary duties of the defendants, the parties' briefing focuses primarily on New York law. Under New York law, a broker's fiduciary duty to a nondiscretionary customer generally is limited to executing the transactions requested by the customer. *See, e.g., Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999); *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998). On this basis, some of the Moving Defendants contend that Count Six should be dismissed, noting that the Complaint does not allege that the defendants were unauthorized in carrying out the DBSI security purchases. *(See, e.g.,* D.I. 253 at 20.) There exists some authority, however, for proposition that "[o]n a transaction-by-transaction basis," a broker not only must faithfully execute the ordered transaction but also "is obliged to give honest and complete information when recommending a purchase or sale." *de Kwiatkowski*, 306 F.3d at 1302. Additionally, it is unlikely that the law of New York will control as to all the defendants, and a number of other jurisdictions have endorsed at least somewhat more expansive fiduciary duties for brokers. *See, e.g., Twp. of Spring v. Std. Ins. Co.*, 497 F. App'x 211, 214 n.1 (3d Cir. 2012); *Leib v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 951, 952 (E.D. Mich. 1978), *aff'd*, 647 F.2d 165 (6th Cir. 1981); *Patsos v. First Albany Corp.*, 741 N.E.2d 841, 849– 50 (Mass. 2001); *Merrill Lynch, Pierce, Fenner & Smith v. Perelle*, 514 A.2d 552, 560–61 (Pa.

---

[19] Again, the confusing term "Broker Defendants" makes it difficult to determine whether Zazzali actually intends to allege negligence as to the Broker-Dealer Parent Defendants and the Broker-Dealer Owner/Officer Defendants. At certain points, the Complaint appears to allege that all the defendants participated directly in the sale of the securities, and Count Five claims that their conduct in connection with those sales was negligent. However, as noted above, Exhibit A as well as the very structure of the Complaint suggest that Zazzali may actually be alleging that the sales were done only by the broker dealer firms and the registered representatives. *See supra* note 9. Zazzali again is instructed to clarify this issue by amendment.

Super. 1986).  As such, the court will decline to dismiss Count Six at this juncture.

## V.    CONCLUSION

In accordance with its above conclusions, the court will grant-in-part and deny-in-part the

present motions.

Dated: September 25, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI,               )
                                )
        Plaintiff,              )
                                )
    v.                          )        Civil Action No.  12-828-GMS
                                )
ALEXANDER PARTNERS, LLC, et al., )
                                )
        Defendants.             )

## **ORDER**

At Wilmington this 25th day of September 2013, consistent with the memorandum

opinions issued this same date, (D.I. **420**; D.I. **421**), IT IS HEREBY ORDERED THAT:

(1) The Motion to Dismiss filed by Jason Bressler (D.I. 233) is GRANTED-IN-PART AND

DENIED-IN-PART;

(2) The Motion to Dismiss filed by Dean McDermott (D.I. 235) is GRANTED-IN-PART

AND DENIED-IN-PART;

(3) The Motion to Dismiss filed by Keith Witter (D.I. 237) is GRANTED-IN-PART AND

DENIED-IN-PART;[1]

(4) The Motion to Dismiss filed by Kasey Hafenbrack (D.I. 238) is GRANTED-IN-PART

AND DENIED-IN-PART;[2]

---

[1] Keith Witter's requests for dismissal pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure are addressed in the court's opinions of this same date.  The request to dismiss for insufficient process and insufficient service of process under Rules 12(b)(4) and 12(b)(5) is denied, as Witter's claim that "he has not been served with process" (D.I. 237 at 4) is belied by the fact that he returned a waiver of service form, (D.I. 72).

[2] Kasey Hafenbrack's requests for dismissal pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) are addressed in the court's memorandum opinions of this same date.  The request to dismiss for insufficient process

(5)  The Motion to Dismiss filed by Mindy Ann Horowitz, Victor Kevin Kurylak, and Celeste Marie Leonard (the "First Montauk Owner/Officer Defendants") (D.I. 244) is GRANTED;[3]

(6)  The Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss filed by Daniel Berckes, Sue Desrosier, and Syd Widga (D.I. 249) is GRANTED-IN-PART;[4]

(7)  The Motion to Dismiss filed by Richard Steven Babjak, Robert Alan Walter, Robert Daniel Yarosz, and World Equity Group (D.I. 252) is GRANTED-IN-PART;

(8)  The Motion to Dismiss filed by Chester Ju, Shirley Ju, Anne Hayward, Alan Schryer, Lori Gilson, Kenneth Bolton, and Scott Thomas (D.I. 259) is GRANTED-IN-PART;

(9)  The Motion to Dismiss filed by Jeffrey Augspurger, Gary Barton, Ron Barton, Tod Billings, Trent Bryerly, Scott Cavey, Allan Crumes, Ron Davies, Tim Duma, Mike Eden, David Kowalski, Robert Kuh, Chris Miller, Michael Myers, Dwain Owens, Mark Pearson, Royce Ruth and Cory Thomas  (D.I. 261) is DENIED;

(10) The Motion to Dismiss filed by Jeffrey Augspurger, Gary Barton, Ron Barton, Tod Billings, Trent Bryerly, Scott Cavey, Allan Crumes, Ron Davies, Tim Duma, Mike Eden, David Kowalski, Robert Kuh, Chris Miller, Michael Myers, Dwain Owens, Mark Pearson, Royce Ruth and Cory Thomas  (D.I. 264) is GRANTED-IN-PART;

---

and insufficient service of process under Rules 12(b)(4) and 12(b)(5) is denied, as Hafenbrack's claim that "he has not been served with process" (D.I. 238 at 4) is belied by the fact that he returned a waiver of service form, (D.I. 36).

[3] This motion seeks to dismiss only those the claims brought against the First Montauk Owner/Officer Defendants under § 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as the First Montauk Owner/Officer Defendants did not understand the Complaint to address any of its other claims to them. (D.I. 246 at 1–2.)  As noted in its memorandum on the Rule 12(b)(6) motions,  the court does not believe this to be the correct understanding of the Complaint.  Zazzali has been ordered to clarify the Complaint's use of the term "Broker Defendants," and that clarification should address this point of confusion.  For now, the court grants the First Montauk Owner/Officer Defendants' motion to dismiss the § 20(a) claims against them.

[4] Daniel Berckes, Sue Desrosier, and Syd Widga seek to compel arbitration or, alternatively, dismissal pursuant to Rule 12(b)(6).  The court addresses only the request for dismissal via this order.

(11) The Motion to Dismiss filed by Richard Allen Frueh and Donald James Gunn, Jr. (D.I. 265) is GRANTED-IN-PART AND DENIED-IN-PART;

(12) The Motion to Dismiss filed by Owen Fisher (D.I. 278) is GRANTED-IN-PART AND DENIED-IN-PART;

(13) The Motion to Dismiss filed by Philip Atwan, Stacey Jim Morimoto, John Paul Spring, and Christian Spring (D.I. 287) is GRANTED-IN-PART AND DENIED-IN-PART;

(14) The Motion to Dismiss filed by Bruce Ransom (D.I. 371) is GRANTED-IN-PART;

(15) The Motion to Join in certain other motions to dismiss for improper venue and lack of personal jurisdiction filed by Daniel Berckes, Sue Desrosier, and Syd Widga (D.I. 384) is DENIED AS MOOT;

(16) Those defendants who filed motions to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and had their motions denied with respect to their Rule 12(b)(3) arguments are given leave to re-file appropriate motions to dismiss for improper venue, as set forth in the court's memorandum opinion.  (D.I. **421** at 9 n.4.)

(17) The Complaint is DISMISSED as follows:

    a.  The claims under § 10(b) of the Exchange Act and 17 C.F.R. § 240.10b-5 (D.I. 1 at ¶¶ 205–14) are DISMISSED with respect to all but the alleged misrepresentations discussed in Paragraph 56 of the Complaint that were made on or after June 27, 2007;

    b.  The claims under § 20(a) of the Exchange Act (D.I. 1 at ¶¶ 215–19) are DISMISSED;

    c.  The claims for breach of contract (D.I. 1 at ¶¶ 220–26) are DISMISSED; and

    d.  The claims for common law fraud (D.I. 1 at ¶¶ 227–31) are DISMISSED with respect to all but the alleged misrepresentations discussed in Paragraph 56 of the Complaint; and

(18) As discussed throughout the court's memorandum addressing the various motions to dismiss under Rule 12(b)(6), Zazzali shall file a motion for leave to amend in order to:

    a.  Clarify the Complaint's allegations that all of the defendants made the statements discussed in Paragraph 56;

    b.  Clarify whether a "statement that each broker Defendant acknowledged its membership in the Financial Industry Regulatory Authority . . . and SIPC and its attendant obligation to comply with all federal and state laws, rules, and regulations" actually appeared in the Subscription Agreements;

    c.  Clarify generally the use of the term "Broker Defendants" so as to address the confusion regarding which claims have been brought against which defendants; and

    d.  Optionally, to correct the Complaint's pleading deficiencies with respect to any of the claims dismissed by this order.

CHIEF, UNITED STATES DISTRICT JUDGE